25 C.C.P.A.(Patents)

## In re REINDERS.
### Patent Appeal No. 4064.

Court of Customs and Patent Appeals.
June 27, 1938.

Oscar Codier, of Washington, D. C., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 15 to 19, inclusive, in appellant's application for a patent for an alleged invention relating to a process for producing hydrogen peroxide.

Claim 15 is illustrative of the appealed claims. It reads: "15. Process for producing hydrogen peroxide from a solution of a persulphate which yields hydrogen peroxide through hydrolytic action, which process comprises heating said solution and vaporizing hydrogen peroxide therefrom by conducting an alternating electric current through said solution in thin layer form under an absolute pressure of about 5 to 150 millimeters of mercury."

The references are: Keep et al., 1,507,120, Sept. 2, 1924; Baum, 1,688,679, Oct. 23, 1928; Löwenstein, 1,851,961, Mar. 29, 1932; Boedecker et al., 1,937,682, Dec. 5, 1933.

In carrying out appellant's process a persulphate solution is introduced into a glass or quartz vessel and caused to flow upwardly therein over so-called "contact

bodies," which are composed of glass, quartz, or acid-proof earthenware and may be of various shapes. The vessel and contact bodies are non-conductors of electricity, and have no catalytic effect upon the solution being treated. The purpose of the "contact bodies" is to cause the persulphate solution to form into thin layers or sheets. The solution is heated by passing an alternating electric current through it as it flows upwardly through the vessel. Appellant states in his application that the heat must be sufficient to cause hydrolysis of the persulphate solution, and, with the aid of steam if necessary, complete distillation of the hydrogen peroxide.

It is unnecessary to further describe the apparatus used by appellant in carrying out his process, as the real issue in the case is whether, in view of the prior art, using an alternating electric current to heat the persulphate solution involves invention.

The reference patent to Keep et al. relates to a process for heating and distilling liquids, and an apparatus therefor. It discloses a process for distilling, concentrating, and purifying crude solutions of sulphuric acid, nitric acid, hydrochloric acid, and the like in earthenware, porcelain, or other refractory non-conductive material by means of an electric current. In his specification the patentee states that the heating of the acid is accomplished "by passing a low voltage *alternating electric current* through the acid" in a retort between electrodes; that the rate of heating may .be regulated by varying the voltage of the current, or by varying the depth of the acid in a portion of his retort; that such .process may be carried out without substantial electrolysis or decomposition of the liquid; and that the invention was of general application, and might be used for the *"heating or distillation of any liquid which is a conductor of electricity."* (Italics ours.)

The reference patent to Baum relates to a process for heating liquids by electrical energy. In the patentee's process a *uniformly spread liquid* is caused to pass downwardly over porous or non-porous contact bodies placed between two electrodes, and an electric current is passed between the electrodes for the purpose of heating the liquid. The patentee states in his specification that the invention might be used for "any purpose and particularly

for distillation, concentration or provocation of chemical reactions, etc."; that the "process admits of a great variety of applications"; that "solutions of all kinds can be reduced"; and that "mixtures of liquids separated and reactions (saponification for instance) carried out, whereby, in every instance, the highest possible theoretical output not only of material but also of thermic effect is nearly obtained. The process enables one likewise to effect the highest possible energy and heat concentrations respectively."

The reference patent to Löwenstein relates to a process for producing hydrogen peroxide from aqueous solutions of persulphates. The patentee's process is carried out by externally heating a distilling chamber, containing the solution to be heated, by means of steam, hot liquids, or waste combustion gases. The solution is, therefore, heated indirectly, and the vapors are drawn off through a separator, into a condenser, and then into a "receiver" by means of a vacuum pump. The patentee states that a pressure of from 20 to 40 millimeters will give good results.

The reference patent to Boedecker et al. relates to a method of producing hydrogen peroxide from a solution of ammonium persulphate, and discloses a process of both indirect heating with steam, as disclosed in the patent to Löwenstein, and direct heating with steam. In the patentees' process a solution of ammonium persulphate is, as stated in their specification, "finely subdivided" by superheated steam having a temperature of about $220°C.$ "under a pressure of 5 atmospheres," and, at the same time, indirectly heated by steam by means of a steam jacket surrounding the pipe through which the solution is conducted. The vapors from the persulphate solution thus heated pass through a chamber of ceramic material, where the hydrogen peroxide vapors are separated from the liquid.

The appealed claims were rejected by the Patent Office' tribunals on either the reference patent to Boedecker et al. or Löwenstein, in view of either of the reference patents to Baum or Keep et al.; the Primary Examiner stating that it did not involve invention to "utilize electric heating as taught by Baum or Keep et al.," and that "a patent cannot be granted for every material in the treatment of which the apparatus of Baum, for example, is found advantageous."

In affirming the decision of the Primary Examiner, the Board of Appeals stated in its decision that every step in appellant's process was disclosed in the prior art, although not in any one reference, and that the only question for decision was whether it involved invention to heat a solution of persulphate by means of an alternating electric current in the production of hydrogen peroxide. In this connection, the Board said: "Each of the patents to Baum and Keep et al. shows that it is possible to heat the liquid by electrical means, but in the making of hydrogen peroxide, apparently no effort was made in so far as the prior art before us is concerned to utilize electrical heating."

In addition to the reference patents, the record contains two other patents introduced by counsel for appellant for the purpose of showing that the references relied upon by the Patent Office tribunals did not teach those skilled in the art of producing hydrogen peroxide that a persulphate solution could be heated by an alternating electric current as disclosed in appellant's application. Those patents are Baum, No. 1,854,327, issued April 19, 1932 on an application filed July 10, 1928, and Tucker et al., No. 2,028,481, issued January 21, 1936 on an application filed July 29, 1933.

The last-mentioned patent to Baum relates to a process for making hydrogen peroxide, and discloses improvements over the prior art. The patentee, however, uses steam for heating the persulphate solutions.

The patent to Tucker et al. discloses an improved method of manufacturing hydrogen peroxide from persulphate solutions. The patentees disclose the use of steam for the heating of the solutions.

It is pointed out by counsel for appellant that neither of those patents suggests the use of electrical energy in a process for making hydrogen peroxide, and emphasis is placed upon the fact that the *patent to Baum introduced in evidence by counsel for appellant and the reference patent to Baum* were evidently issued to the same person. Counsel for appellant states that, although the patentee Baum disclosed the use of electrical energy in heating liquids in his reference patent No. 1,688,679, issued October 23, 1928 on an application filed October 15, 1925, it clearly was not obvious to him that hydrogen peroxide could be produced by heating persulphate solutions with electrical energy, because, on July 10, 1928, he filed an application for a process for producing hydrogen peroxide in which the use of electrical energy was not suggested, which application matured into patent No. 1,854,327 on April 19, 1932. Counsel further argues that, so far as the production of hydrogen peroxide is concerned, the prior art discloses the use of steam only as a heating element, and that the prior art processes had disadvantages which appellant's process has overcome.

It is claimed in appellant's application that when *steam* is used *directly* to heat a persulphate solution, the hydrogen peroxide produced is somewhat unfavorably affected by impurities in the steam; that those impurities act catalytically to cause decomposition of the hydrogen peroxide; and that the hydrogen peroxide vapors are excessively diluted by the steam: that when *steam* is used *indirectly* to heat the persulphate solution, the heat exchange must take place through a material which is a good conductor of heat, such, for example, as lead, and that such materials have a catalytically decomposing effect upon the hydrogen peroxide.

Counsel for appellant argues that the disadvantages above set forth were well-known in the art, as appears from the patents to Baum and Tucker et al. which he introduced in evidence, and that appellant has overcome those disadvantages by using an alternating electric current instead of steam to heat the persulphate solution.

It is true that neither Baum nor Tucker et al. filed an application for a patent for appellant's process, and that they disclosed steam as the heating element in the patents introduced in evidence by counsel for appellant; however, the argument of counsel for appellant that neither of those patentees recognized at the time their applications were filed that hydrogen peroxide could be produced by heating persulphate solutions by means of electrical energy is mere conjecture.

The reference patent to Keep et al. clearly teaches the use of an alternating electric current in the *"heating or distillation of any liquid which is a conductor of electricity."* (Italics ours.)

The reference patent to Baum teaches the use of an electric current to heat a uniformly spread liquid for distillation or

concentration purposes, and teaches that all mixtures can be reduced by his process.

Surely, in view of the teachings of the reference patents, it would not require the exercise of the inventive faculties to heat a persulphate solution by passing an alternating electric current therethrough, and discover that by so doing hydrogen peroxide could be successfully produced.

It is true, as argued by counsel for appellant, that in appellant's process the persulphate solution is under certain stated pressures. However, the use of pressures within the range specified in the appealed claims is shown to be old in the reference patents to Boedecker et al. and Löwenstein.

We are of opinion that the tribunals of the Patent Office reached the right conclusion.

The decision of the Board of Appeals is affirmed.

Affirmed.